IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ROMAN MORALES-GARZA,

    Petitioner,

v.

    Civ. No. 1:16-cv-01024-JDB-egb
    Crim. No. 1:13-cr-10092-JDB-1

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING CLAIM UNDER *JOHNSON V. UNITED STATES*,
DENYING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner, Roman Morales-Garza, has filed, through counsel, a motion to vacate, set aside, or correct his sentence (the "Petition"). (Docket Entry ("D.E.") 3.)[1] He has also filed, in his criminal case, a motion seeking relief from his sentence under the authority of *Johnson v. United States*, 135 S. Ct. 2551 (2015). (*United States v. Morales-Garza*, No. 1:13-cr-10092-JDB-1 (W.D. Tenn.), D.E. 608.) For the reasons that follow, the *Johnson* claim and the Petition are DENIED.

BACKGROUND

On October 21, 2013, a federal grand jury sitting in the Western District of Tennessee returned a two-count indictment charging Morales-Garza and multiple co-defendants with federal drug crimes. (No. 1:13-cr-10092-JDB-1, D.E. 4.) The Defendant[2] was charged in Count 1 with

---

[1] Unless otherwise noted, record citations in this order are to documents filed in Case No. 1:16-cv-01024-JDB-egb.

[2] The Court will refer to Petitioner as "the Defendant" in its discussion of the underlying criminal case.

conspiracy to distribute and possess with intent to distribute methamphetamine, cocaine, and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. (*Id.*, D.E. 4.) In Count 2, he was charged with aiding and abetting in the distribution of, attempting to distribute, possessing with intent to distribute, and attempting to possess with intent to distribute methamphetamine, cocaine, and marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (*Id.*) On November 18, 2013, he was additionally charged in Count 3 of a superseding indictment with aiding and abetting in the possession with intent to distribute more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (*Id.*, D.E. 116.)

Attorney Russell Larson was appointed as defense counsel. (*Id.*, D.E. 21, 445.) Morales-Garza subsequently entered into a written plea agreement with the Government (*id.*, D.E. 324) and pleaded guilty on May 9, 2014, to Count 1 (*id.*, D.E. 325). At the change of plea hearing, an interpreter was present to translate for the Defendant. (*Id.*, D.E. 599.)

The United States Probation Office submitted a presentence report and second addendum to the presentence report (collectively the "PSR"), which set forth the calculation of the Defendant's advisory sentencing range under the United States Sentencing Commission Guideline Manual ("Sentencing Guidelines," "Guidelines," or "U.S.S.G.").[3] It assigned a base offense level of 36 premised on a drug quantity equivalent of 32,703.7976 kilograms of marijuana. *See* U.S.S.G. § 2D1.1(c). A two-level enhancement was applied due to the Defendant's possession of a firearm recovered when agents executed a search warrant at his residence, and an additional two levels were added for his having maintained a premises for the purpose of manufacturing or distributing

---

[3]Except where otherwise noted, all references to the Guidelines are to those in effect on the date of the Defendant's sentencing. *See* United States Sentencing Commission, *Guidelines Manual* (eff. Nov. 1, 2014).

2

the controlled substances. *See id.*, §§ 2D1.1(b)(1), (12). The offense level was further increased by four for his role in the offense, resulting in an adjusted offense level of 44. *See id.*, § 3B1.1(a). Three points were deducted for acceptance of responsibility. *See id.*, § 3B1.1(a). Based on a total offense level of 41 and a criminal history category of I, the Guidelines imprisonment range was 324-405 months, restricted by statute to 240 months.

A sentencing hearing was held on February 5, 2015, at which an interpreter was present to assist the Defendant. (No. 1:13-cr-10092-JDB-1, D.E. 518, 600.) The Court imposed a sentence of 208 months' imprisonment to be followed by three years of supervised release. (*Id.*, D.E. 518.) No direct appeal was taken.

On February 4, 2016, the inmate filed his Petition, asserting the following claims:

Claim 1: "Defendant's counsel, Rusty Larson, was ineffective due to his failure to translate the plea agreement to Defendant, causing [him] to enter an unknowing and involuntary guilty plea."

Claim 2: "Defendant's counsel . . . was ineffective for failing to take remedial action after he became aware of Defendant's untruthful answers at the Change of Plea Hearing."

(D.E. 3 at PageID 5-6.) On October 6, 2016, the inmate submitted his *Johnson* claim, in which he maintained that the enhancement of his sentence for possession of a firearm was unconstitutional. (No. 1:13-cr-10092-JDB-1, D.E. 608.)

DISCUSSION

Respondent, the United States of America, filed a combined response to the Petition and the *Johnson* claim, as well as an affidavit from defense counsel. (D.E. 17, 17-1.) The Government argued therein that all of the claims are devoid of merit and should be denied on that basis. Petitioner did not file a reply, although he was allowed to do so. (*See* D.E. 9.) Having reviewed the record in the underlying criminal case, as well as the briefs and affidavits, the Court determines that Petitioner has not established entitlement to relief on any of his claims.

I.  Legal Standards

A prisoner seeking to vacate his sentence under § 2255 "must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[W]hen a [petitioner] presents an affidavit containing a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the government offers nothing more than contrary representations to contradict it, the [petitioner] is entitled to an evidentiary hearing." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013)). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333. Where the judge considering the § 2255 petition also presided over the criminal case, he may rely on his recollection of the case in ruling on the petition. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). The petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A § 2255 claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense."

*Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court considering a claim of ineffective assistance must apply "a strong presumption" that counsel's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

Prejudice is demonstrated where there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the plea context, a petitioner must show that, if his counsel had not given him erroneous advice, there is a "reasonable probability" that he would not have pleaded guilty but instead would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Pilla v. United States*, 668 F.3d 368, 372-73 (6th Cir. 2012).

II. *Johnson* Claim

The prisoner challenges his sentence based on the United States Supreme Court's ruling in *Johnson* that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally void for vagueness. *See Johnson*, 135 S. Ct. at 2557. He insists that *Johnson* rendered unconstitutional the enhancement of his offense level for the specific offense characteristic under U.S.S.G. § 2D1.1(b)(1). The argument fails.

Under the ACCA, a person who is convicted of being a felon in possession of a firearm and who "has three previous convictions . . . for a violent felony or a serious drug offense . . .

5

committed on occasions different from one another . . . shall be . . . imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that . . . (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" is known as the "residual clause." *Johnson*, 135 S. Ct. at 2555-56.

In *Johnson*, the Supreme Court held that the residual clause was unconstitutionally void for vagueness. *Id.* at 2256-57. Therefore, an enhanced sentence under that clause violates due process as guaranteed by the Fifth Amendment. *Id.*

Petitioner here is not entitled to relief under *Johnson*, however. On March 6, 2017, the Supreme Court refused to extend *Johnson*'s reasoning to the Sentencing Guidelines, explaining that, "[u]nlike the ACCA, . . . the advisory Guidelines do not fix the permissible range of sentences." *See Beckles v. United States*, 137 S. Ct. 886, 892 (2017). "[T]he Guidelines" thus "are not subject to a vagueness challenge under the Due Process Clause." *Id.* The *Johnson* claim is therefore DENIED.

III.    Claim 1

Morales-Garza asserts that his attorney rendered ineffective assistance by failing to have the plea agreement translated to him from English to Spanish and for promising that he would receive a sentence of incarceration of four to seven years if he pleaded guilty. He maintains that counsel's conduct caused him to mistakenly "believe[] that his sentence would not exceed seven years if he pleaded guilty," thus rendering his plea involuntary and unknowing. (D.E. 3-1 at

6

PageID 20.) In support, he has submitted his own affidavit (D.E. 6-1), as well as that of his niece, Jasmyd Aguirre (D.E. 3-2). Respondent argues that the claim is without merit as it is contradicted by the record in the underlying criminal case and by counsel's affidavit. The Court finds that the record in Petitioner's criminal case belies his contentions about his attorney's conduct, as well as his assertion that the alleged actions prejudiced him. Therefore, the claim is subject to summary dismissal without an evidentiary hearing.

In his affidavit, Petitioner avers that he is "a Spanish-speaking, Mexican citizen," who, at the time "the criminal charges against [him] were pending, . . . was not able to read, write, speak, or understand English, other than a few common words and phrases." (D.E. 6-1 at ¶¶ 3-4.) In support of his allegation that counsel never had the plea agreement translated for him, the inmate attests that counsel "met with [him] three times before [he] pleaded guilty," but "a court-appointed interpreter" did not attend any of the meetings.[4] (*Id.* at ¶¶ 5-6.) At one of the meetings, his niece was present to translate, but no discussion was had regarding a "possible sentence or pleading guilty." (*Id.* at ¶ 9.) Nor did his niece "translate any documents for" him. (*Id.* at ¶ 8.) Aguirre's affidavit supports Petitioner's averments regarding the meeting she attended. (*See* D.E. 3-2 at ¶¶ 2-5.)

Petitioner also submits "[t]hat Mr. Larson first told me that if I pleaded guilty, the most time I would have to spend in prison was six or seven years. Later he told me that four years was the longest I would have to spend in prison if I pleaded guilty." (D.E. 6-1 at ¶ 10.) Counsel's alleged promises were "the only reason[s] [he] pleaded guilty." (*Id.* at ¶ 11.)

---

[4]In some respects, these contentions contradict Petitioner's supporting brief, in which he states that there were four meetings prior to the plea. (*See* D.E. 3-1 at PageID 15.) The brief further states that a professional interpreter attended only one of those meetings, which was "for investigative purposes only." (*Id.*)

Larson acknowledges that the niece translated at one meeting and does not deny the plea agreement and possible sentencing were not discussed at that meeting. (D.E. 17-1 at ¶ 6.) But, he maintains that he "provided . . . independent interpreters on other occasions," including interpreters "Sylvia Merendiz from Shelby County, Tennessee and . . . Heather Hayes from Nashville Tennessee." (*Id.* at ¶¶ 5, 10.) He also insists that "[p]rior to Mr. Morales Garza signing any plea agreement[,] [t]he document was interpreted for him by the qualified interpreter, not a family member, and Mr. Garza was allowed sufficient opportunity and time to have questioned any matters that he did not understand before he was ever allowed to possess a writing instrument so as to place his name on the Plea Agreement." (*Id.* at ¶ 9.) In addition, Larson avers that "[a]t no time did [he] ever promise to Mr. Morales Garza a specific sentence, . . . and [his client] advised [him] at each and every meeting . . . that he understood and that he had no questions to ask and was never hurried, pressured, or promised any reward for his actions." (*Id.* at ¶ 10.)

Counsel's statements are consistent with Petitioner's sworn testimony. At the beginning of the change of plea hearing, the Defendant, aided by an interpreter, answered the Court's questions as follows:

> THE COURT: Mr. Garza, as I indicated I will be asking you some questions about your plea. If there is anything I ask you that you do not understand or wish to consult with your attorney, Mr. Larson, would you let me know, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And also I would advise you that inasmuch as you've been placed under oath by the clerk in this matter, the Court will assume the answers you are going to give me this morning will be truthful. If it is later determined that any of your responses were not truthful, you could be subject to additional criminal charges including that of perjury. Do you understand that, sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: What is your age, please?

8

> THE DEFENDANT: Fifty-six, no [fifty-five].
>
> THE COURT: All right, sir. How far did you go in school? How much education have you had?
>
> THE DEFENDANT: Only until six grade.
>
> THE COURT: All right. Are you able to read and write either in Spanish or English, please?
>
> THE DEFENDANT: Just Spanish.
>
> THE COURT: All right, sir. Before coming here today have you taken any type of medication or any other type of drugs that would [a]ffect your understanding of these proceedings?
>
> THE DEFENDANT: I simply took the pills for my blood sugar.
>
> THE COURT: Okay. Do you believe that that has any [e]ffect on your ability to understand what we're doing here today?
>
> THE DEFENDANT: No.
>
> THE COURT: You do understand what this proceeding is about, sir? Do you, sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Now have you had sufficient opportunity to discuss this matter with your attorney, Mr. Larson?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you satisfied with his advice and representation given to you in this case?
>
> THE DEFENDANT: Yes.

(No. 1:13-cr-10092-JDB-1, D.E. 599 at PageID 1187-89.)

In accordance with Rule 11 of the Federal Rules of Criminal Procedure, the Court then reviewed with the Defendant the constitutional rights he would be giving up by pleading guilty,

9

and asked after each explanation whether he understood what he was forfeiting.[5] (*See id.*, D.E. 599 at PageID 1190-92.) Petitioner always answered that he did. (*Id.*, D.E. 599 at PageID 1190-92.) He also responded in the affirmative when the Court asked him "having gone over those rights with you, sir, is it still your intention to enter a plea of guilty to Count 1 of the superseding indictment?" (*Id.*, D.E. 599 at PageID 1192.)

The Defendant likewise answered "yes" when asked whether the indictment had been "interpret[ed] . . . from English into Spanish" for him. (*Id.*, D.E. 599 at PageID 1192.) The Court reviewed the potential statutory penalties and Morales-Garza said that he understood them. (*Id.*, D.E. 599 at PageID 1192-93.) He also affirmed that he had not been threatened or forced "in any way" to plead guilty. (*Id.*, D.E. 599 at PageID 1194.)

Regarding the plea agreement, the following exchange took place:

THE COURT: Now there has been a document provided to the Court entitled a plea agreement. It is four pages in length and appears to have your signature, as well as that of your attorney, Mr. Larson, and that of Mr. Wilson, who represents the United States government in this matter. I'm going to ask the clerk to hand this back to you and ask if you would affirm or confirm that is your signature on the plea agreement, sir. Before I do that let me ask you if you did have the opportunity to have that plea agreement, it's in English of course, have that translated from English to Spanish for your consideration. Did you have the opportunity, sir?

THE DEFENDANT: Yes

THE COURT: And following that translation did you have the opportunity to discuss it with your attorney, Mr. Larson?

THE DEFENDANT: Yes.

---

[5]Rule 11 sets forth the procedures for a court's acceptance of a guilty plea. The rule requires, among other things, that the court confirm that the defendant understands "the nature of each charge to which the defendant is pleading" and the rights he or she is waiving. Fed. R. Crim. P. 11(b)(1)(F)-(G).

THE COURT: All right, sir. I'm going to ask the clerk to hand this again back to you to ask you to confirm your signature on the plea agreement. Is that your signature on the plea agreement, sir?

THE DEFENDANT: Yes.

THE COURT: And as I indicated, or you did indicate to me that you had had the chance to review it and discuss it with your attorney. But after having done that, did you sign that document freely and voluntarily, sir?

THE DEFENDANT: Yes.

(*Id.*, D.E. 599 at PageID 1195-96.)

At the Court's direction, the prosecutor reviewed the plea agreement in open court, including the agreement's language that the document "is the entire agreement of the parties," "nothing in this agreement promises a specific sentence," and "[t]he defendant is satisfied with his legal representation and has entered this agreement freely, knowingly and voluntarily." (*Id.*, D.E. 599 at 1198.) Asked by the Court whether "this [is] your understanding as to the terms of the plea agreement you had with the United States government," Morales-Garza answered "Yes." (*Id.*, D.E. 599 at PageID 1198-99.)

The Court also discussed the Sentencing Guidelines with the Defendant:

THE COURT: Now, Mr. Garza, have you and Mr. Larson had the opportunity to discuss in a general way [what] is called the United States Sentencing Guidelines. Have you [had] a chance to talk about that, sir, and their application to your case?

THE DEFENDANT: Yes.

THE COURT: I'm sure as Mr. Larson explained to you, those guidelines provide to this Court general ranges of sentencing that I can consider. Those guidelines are no longer mandatory upon the Court, they're only advisory. However, I'm still directed to consider them along with other factors that Congress has established in determining what an appropriate sentence might be in your case. Do you understand that, sir?

THE DEFENDANT: Yes.

(*Id.*, D.E. 599 at PageID 1199-1200.) Based on the Defendant's answers, and his acknowledgment of guilt, the Court found that he had "freely and voluntarily plead[ed] guilty to Count 1 of the superseding indictment." (*Id.*, D.E. 599 at PageID 1204.)

A petitioner's sworn testimony is presumed to be truthful and therefore constitutes a "formidable barrier" to collateral attack. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Underwood v. United States*, No. 18-5793, 2018 WL 7140598, at *2 (6th Cir. Nov. 19, 2018) (unpublished) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)) ("In a collateral attack on a conviction, a transcript of proceedings is generally sufficient to demonstrate that the defendant's conduct was voluntary and knowing."). "Generally, where the Court 'scrupulously follows' the procedures required by Rule 11, a criminal defendant is bound by his statements in response to the Court's inquiries." *Garnica v. United States*, 361 F. Supp. 2d 724, 733 (E.D. Tenn. 2005) (citing *Baker v. United States,* 781 F.2d 85, 90 (6th Cir. 1986)).

The affidavits Morales-Garza has submitted in support of his claim do not overcome his sworn testimony. Petitioner does not directly argue that the plea agreement was not translated for him. That glaring omission is unexplained. Instead, he attempts to raise a reasonable inference that the agreement was not interpreted for him. As noted, he submits that a court-appointed interpreter was never present at his pre-plea meetings with his attorney and that at the only meeting he claims *was* translated—by his niece—counsel did not discuss a possible sentence or the plea agreement. But his insistence that no professional interpreters attended any pre-plea meetings is seemingly undermined by his additional contention "[t]hat Mr. Larson first told me that if I pleaded guilty, the most time I would have to spend in prison was six or seven years. Later he told me that four years was the longest I would have to spend in prison if I pleaded guilty." (D.E. 6-1 at ¶ 10.) Counsel's alleged promise was so significant, Petitioner asserts, that it was "the only reason [he]

12

pleaded guilty." (*Id.* at ¶ 11.) Having attested that he "was not able to . . . speak, or understand English, other than a few common words and phrases" (*id.* at ¶ 4), and having argued that counsel should therefore have "properly communicate[d] with [him] in Spanish" and had the plea agreement interpreted for him (D.E. 3-1 at PageID 20 ), Morales-Garza does not explain how he could have understood counsel's alleged sentencing promises if no professional interpreter was present at the two meetings his niece did not attend. If there is some explanation for this seeming inconsistency, Petitioner has not provided it.

Morales-Garza is therefore bound by his testimony that counsel had the plea agreement translated from English to Spanish and that he signed and entered into the agreement freely and voluntarily. Because the document provided that it was the complete agreement between the parties and that no specific sentence was promised, his contention that counsel's alleged sentencing promise caused him to plead guilty is likewise belied by the record.

The allegation of a sentencing promise is also not sufficiently supported by the inmate's affidavit. The Supreme Court's decision in *Blackledge* is instructive. In that case, the Court held that the district court erred in summarily dismissing the petitioner's claim that counsel had promised him a certain sentence. *Blackledge*, 431 U.S. at 76. Against the backdrop of a plea hearing "shrouded in secrecy,"[6] the Court found that petitioner had provided important factual amplification of his allegation:

---

[6]In the North Carolina procedure afforded the petitioner in *Blackledge*,

> [n]o transcript of the proceeding was made. The only record was a standard printed form. There [was] no way of knowing whether the trial judge in any way deviated from or supplemented the text of the form. The record [was] silent as to what statements [the petitioner], his lawyer, or the prosecutor might have made regarding promised sentencing concessions. And there [was] no record at all of the sentencing hearing three days later, at which one of the participants might well have

13

> [Petitioner] alleged as a ground for relief that his plea was induced by an unkept promise. But he did not stop there. He proceeded to elaborate upon this claim with specific factual allegations. The petition indicated exactly what the terms of the promise were; when, where, and by whom the promise had been made; and the identity of one witness to its communication.

*Id.* at 75-77 (internal footnote omitted).

Petitioner here attests to the substance of the alleged promises, *i.e.*, a four- to seven-year sentence in exchange for his guilty plea, and he identifies his attorney as the person who made them. He does not, however, describe where and when the promises were uttered, or whether there was a third-party witness to the events. *See, e.g.*, *Craig v. United States*, 513 F. App'x 487, 491 (6th Cir. 2013) (distinguishing *Blackledge* and finding that petitioner's allegation that his attorney "advised him that he would not receive a life sentence if he pleaded guilty" was "conclusory" because "[t]he timing [was] not identified, other than 'during the plea process'"); *see also O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of verity, [were] not sufficient to warrant a hearing" on petitioner's claim that counsel had promised him a certain sentence.).

Even if Petitioner could show deficient performance by counsel with regard to the plea agreement and sentencing advice, he cannot show that he was prejudiced. During the plea colloquy, this Court "cured any prejudice that might have resulted from [the sentencing] promise[s] . . . by making it clear the Court, not the parties, would determine his sentence, and Petitioner would be bound to his plea even if his sentence were more severe than he expected." *Garnica*, 361 F. Supp. 2d at 737; *see also Cadavid-Yepes v. United States*, 635 F. App'x

---

> made a statement shedding light upon the veracity of the allegations [the petitioner] later advanced.

*Blackledge*, 431 U.S. at 77.

14

291, 299-300 (6th Cir. 2016) ("proper plea colloquy cure[d]" counsel's alleged promise that petitioner would receive a "time served" sentence). Similarly, the prosecutor's review of the plea agreement's terms in open court, which was translated by the court interpreter, cured counsel's alleged failure to have the agreement translated at a pre-plea meeting. *See United States v. Barmuha*, No. 2:10-cr-00172-RLH-GWF, 2015 WL 545134, at *5 (D. Nev. Feb. 9, 2015) ("To the extent that [counsel] did not adequately convey the plea agreement's provisions, any deficiency was cured during the change of plea hearing when [the petitioner] received simultaneous Hebrew interpretation of the plea agreement."); *see also United States v. Padilla-Rodriguez*, 335 F. App'x 724, 729 (10th Cir. 2009) ("It is undisputed that regardless of whether Mr. Padilla-Rodriguez had an interpreter during 'the plea deal,' an interpreter was provided at the plea colloquy—during which the significant terms of the plea agreement were stated aloud by the district court and acknowledged by Mr. Padilla-Rodriguez.") Because Petitioner has not met either *Strickland* prong with regard to counsel's pre-plea conduct, Claim 1 is DENIED.

IV. Claim 2

Morales-Garza asserts that, "[b]ased on Mr. Larson's erroneous [sentencing] guarantee or his failure to provide a translator at the crucial stage of Defendant's case, Defendant believed that the [plea] hearing was a mere formality and that as long as his answers satisfied the Court, his plea would be accepted and his sentence would be drastically reduced." (D.E. 3-1 at PageID 21.) He therefore "answered a number of the Court's questions incorrectly and untruthfully" and "either did not fully understand the questions or committed perjury." (*Id.* at PageID 15-16, 21.) He alleges that counsel "knew that Defendant's answers were untruthful because the questions concerned Mr. Larson's prior communications with Defendant" and argues that counsel therefore had a duty to "consult with Defendant concerning his false statements" or "attempt to withdraw or

15

disclose Defendant's statements to the [C]ourt." (*Id.* at PageID 21.)  He insists that "[d]isclosure would have prevented Defendant from entering an unknowing and involuntary plea." (*Id.*)  The claim is without merit.

The Court has already found the Petitioner has failed to demonstrate that the plea agreement was not translated or that counsel promised him he would receive a specific sentence. He therefore has not shown any "untruth[s]" to which counsel should have responded.

In addition, his allegations that he did not understand the proceeding, committed perjury, and viewed the colloquy as a "mere formality" are unsupported assertions.  Petitioner's affidavit contains none of these explanations, despite the fact that they are central to his claim.

Finally, the assertion that the inmate lacked an understanding of the Court's questions at the plea hearing is itself contradicted by the record.  The Court told the Defendant at the start of the plea hearing that he should indicate if he did not understand something, but he never took the Court up on that offer.  The Court also verified at numerous times during the proceeding that the Defendant understood the questions and the consequences of his plea.  There simply was no indication that he did not understand what was happening. *See Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006) (a district judge may rely on his recollections of criminal proceedings in deciding a § 2255 motion).  Petitioner has thus failed to establish that counsel performed deficiently.  Claim 2 is therefore DENIED.

For all these reasons, the *Johnson* claim and the Petition are DENIED.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional

16

right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny Petitioner's claims. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that, if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[7]

---

[7]If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.

17

IT IS SO ORDERED this 21st day of February 2019.

                                                  <u>s/ J. DANIEL BREEN</u>
                                                 UNITED STATES DISTRICT JUDGE